**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JIMMY R. PRESLEY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | No. 18-4353 |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

TIMOTHY R. RICE                                                  April 9, 2019
U.S. MAGISTRATE JUDGE

  Plaintiff Jimmy Presley, a 50-year old veteran at the alleged onset of disability, suffers from several medically determinable impairments, including paranoid schizophrenia and post-traumatic stress disorder ("PTSD").  R. at 14.  Presley alleges the Administrative Law Judge ("ALJ") erred in denying his application for Disability Insurance Benefits by finding his mental impairments were not severe based on: (1) his failure to obtain treatment; (2) his 2009-2015 work history; and (3) an improperly-discounted Veterans Administration ("VA") determination that he was 100% disabled by his schizophrenia.  Pl. Br. (doc. 10) at 3-9.  Because the ALJ failed to provide substantial evidence to support her determination that Presley's paranoid schizophrenia was not a severe mental impairment, I remand his claim for further consideration.[1]

  The ALJ acknowledged Presley's paranoid schizophrenia, but found it did not constitute

---

[1]  Presley consented to my jurisdiction on October 28, 2018 (doc. 5), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018).  See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

a severe impairment. R. at 14. Because his last date of insurance was December 31, 2010, the ALJ ruled that he must show he suffered from a severe impairment by that date to qualify for benefits. Id. at 15. Consequently, she put great emphasis on his lack of mental health treatment records between 2006 and 2010. Id. ("there is no mention of treatment between 2006 and 2010"). She noted that "the only evidence from that period is a single note that a doctor, evaluating the claimant's prior records, concluded that a 1986 diagnosis of 'atypical psychosis' was in fact consistent with the onset of paranoid schizophrenia." Id.

The ALJ also described Presley as "self-employed operating a thrift store . . . from 2009 through early 2015." Id. at 16 (citing id. at 187). She concluded that "[a]t the least, claimant's work activity shows an ability to interact with others and to handle various organizational tasks and the like." Id. She found there was "good reason" to discount the VA determination that Presley was 100% disabled by his paranoid schizophrenia because: (1) the evidence failed to show any particular limitations before his date last insured; (2) the VA decision was based on a different time period; (3) the VA decision was based on different criteria; (4) Presley ran "his own business" "throughout the period under consideration"; and (5) Presley failed to seek any medical treatment. Id. at 17.

The ALJ's conclusions regarding Presley's failure to seek treatment and ability to function as a business owner were made together – the ALJ considered them his "ongoing functioning throughout the period under consideration." Id. Presley explained, however, that he never made any money running the thrift store. Id. at 55-56. This comports with his 2009 through 2014 earnings record, id. at 134, and the function report the ALJ cited, which describes his thrift store as only a "hobby," id. at 191. The ALJ inappropriately considered evidence that

Presley owned a thrift store for six years without making any money from it as evidence that he was able to "interact with others," "handle various organizational tasks and the like," and "run[] his own business."  Id. at 16-17.

By fundamentally misinterpreting Presley's thrift store experience, the ALJ failed to appropriately consider Presley's failure to seek treatment at that time.  20 C.F.R. § 1530(c) (ALJs must "consider [claimants'] physical, mental, educational, and linguistic limitations . . . when determining if [they] have an acceptable reason for failure to follow prescribed treatment.").  "The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment."  SSR 82-59, 1982 WL 31384, at *3 (1982).

Social Security's manual that provides guidance to ALJs on how to make their determinations uses the specific example of paranoid schizophrenia when explaining how failure to follow prescribed treatment should be considered:

> The existence of a psychiatric impairment may provide good reason for a claimant's failure to follow prescribed treatment. An example of such would be a paranoid schizophrenic with a highly organized delusional system which leads him to believe that people are attempting to poison him, and that medication prescribed by a physician is part of the poisoning "plot."

HALLEX II-5-3-1 (1982).

Presley's records show he disagreed with the diagnosis of paranoid schizophrenia, id. at 383, did not trust the VA, id. at 512, and was paranoid about his medication, id. at 299. Although the ALJ reasonably concluded that someone does not have a severe impairment if they are capable of running a business without medical treatment, her conclusion falls apart because her premise about Presley's business is unsupported.  Because substantial evidence does not exist

that Presley "ran a business" from 2009 through 2014, the ALJ was required to explain why she did not consider that his failure to follow prescribed treatment could be due to his mental impairment. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009) (the ALJ must explain the evidence supporting her findings and the reasons for discounting the evidence she rejects); see also Mendez v. Chater, 942 F. Supp. 503, 508 (E.D. Pa. 1996) (failure to follow prescribed treatment can be a result, or symptom, of mental impairment).

The ALJ based her determination that Presley "fail[ed] to show any particular limitation" on the same misunderstanding of his functioning. Her citations to positive interactions with his medical care providers as evidence that he had no limitations interacting with people fail to account for their observations of his paranoia and angry demeanor. R. at 285-86, 299-300, 318, 321-22, 512.

The ALJ also inappropriately found the VA decision was based on a different time period than the one at issue here. The VA decision is dated August 24, 2010. Id. at 221. Presley's date last insured is December 31, 2010. Id. at 15. If the VA determination contained adequate information to find Presley disabled as of its date, it also contained sufficient information to find him disabled before his date last insured. Further, the determination quotes extensively from a November 2009 examination. Id. at 223, 225. It discusses symptoms reported during that examination and the examiner's conclusion that Presley had a Global Assessment Functioning ("GAF") score of 32.[2] Id. at 225.

---

[2]     GAF scores (on a 100-point scale) reflect the mental health specialist's assessment on a particular day of the severity of a patient's mental health, and are based on the patient's state of mind and symptoms. Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). A GAF score in the range of 31 to 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical,

The burden of establishing a severe impairment "is not an exacting one." McCrea v.

Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); see also Newell v. Comm'r of Soc. Sec.,

347 F.3d 541, 546-47 (3d Cir. 2003) (the step-two inquiry is a de minimis screening device).  A

medically determinable impairment is severe as long as the claimant demonstrates "something

beyond 'a slight abnormality or a combination of abnormalities which would have no more than

a minimal effect on an individual's ability to work.'"  McCrea, 370 F.3d at 360 (quoting SSR 85-

28, 1985 WL 56856, at *3); see also Bowen v. Yuckert, 482 U.S. 137, 153 (1987).  "Any doubt

as to whether this showing has been made is to be resolved in favor of the applicant."  McCrea,

370 F.3d at 360.  Because she failed to support her conclusion that he was "running his own

business" with substantial evidence and failed to analyze whether he failed to obtain treatment

due to his mental impairment, the ALJ's opinion does not provide substantial evidence to support

her conclusion that Presley's schizophrenia was not "severe."  McCrea, 370 F.3d at 360.

An appropriate Order accompanies this opinion.

---

obscure, or irrelevant) OR major impairment in several areas, such as work or school, family
relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and
is unable to work; child frequently beats up younger children, is defiant at home, and is failing at
school).  Id.  GAF scores have not been included in the most recent version of the DSM,
published in 2013, due in part to their "conceptual lack of clarity" and lack of validity.  DSM-V
at 16.